## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| **MARK FRANCIS WARNER,** | **Civil Action No. 3:22-cv-109** |
| PLAINTIFF | COMPLAINT FOR DAMAGES |
| v. | AGE DISCRIMINATION IN EMPLOYMENT ACT |
| **BON SECOURS MERCY HEALTH, INC.** DEFENDANT. | JURY TRIAL DEMANDED |

Plaintiff Dr. Mark Francis Warner submits the following Complaint against Defendant Bon Secours Mercy Health, Inc. ("BSMH" or "Defendant").

### PRELIMINARY STATEMENT

1.      This is an action to recover for damages under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et al. (the "ADEA") and the Virginia Human Rights Act Va. Code § 2.2-3900 et seq. (the "VHRA").

2.      Dr. Warner is an experienced cardiologist working for BSMH, a hospital system operating throughout Virginia and several other states.

3.      Dr. Warner is the oldest cardiologist out of approximately seven other physicians who work in the same cardiology practice group (the "Northside Practice Group") at BSMH.

4.      In April 2021, Dr. Warner's supervisor, Dr. Vipal Sabharwal, informed Dr. Warner that, for business reasons, BSMH was eliminating a cardiology position from its practice. Rather than terminating a physician, however, BSMH had instead chosen to substantially reduce the hours of Dr. Warner and Dr. Charles Nelson, the latter of whom is the second oldest physician in Dr. Warner's cardiology group.

5.     While informing Dr. Warner about the planned reduction in his hours, Dr. Sabharwal inexplicably brought up Dr. Warner's age and cautioned him against working too long as an older doctor.

6.     In the months following the April 2021 meeting, multiple cardiologists separated from BSMH, thus mooting the need to eliminate a cardiology position. Nevertheless, BSMH moved forward with the plan to reduce the hours of Drs. Warner and Nelson.

7.     Indeed, rather than increase the hours of either Dr. Warner or Dr. Nelson, BSMH hired a substantially younger cardiologist to make up the shortfall of hours lost by the separation of these cardiologists.

8.     Dr. Warner therefore brings this claim against BSMH as the result of its decision to substantially reduce his hours, and therefore his compensation, in violation of the ADEA.

## PARTIES

9.     Plaintiff Mark Warner is an individual domiciled in Midlothian, Virginia. Dr. Warner is over 40 years of age.

10.     Defendant BSMH is a nonstock corporation organized under the laws of the Commonwealth of Virginia and with a principal place of business in Cincinnati, Ohio. Defendant is engaged in an industry affecting commerce with twenty or more employees.

## JURISDICTION & VENUE

11.     This Court has subject matter jurisdiction over Dr. Warner's ADEA claims pursuant to 28 U.S.C. § 1331.

12.     The Court has supplemental jurisdiction over Dr. Warner's claims arising under Virginia law pursuant to 28 U.S.C. § 1367 because those claims arise under a common nucleus of operative facts.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

14.     On June 7, 2021, Dr. Warner filed a charge of discrimination against BSMH with the EEOC asserting claims of age discrimination under the ADEA.

15.     On or about February 16, 2022, Dr. Warner received a Notice of Right to File this civil action from the EEOC.

16.     Accordingly, Dr. Warner has exhausted the necessary administrative procedures for filing his age discrimination claims pursuant to the ADEA.

**FACTUAL ALLEGATIONS**

**Dr. Warner's tenure with BSMH**

17.     Dr. Warner was first employed by Bon Secours—the predecessor to BSMH—as an Interventional Cardiologist in approximately September 2009.

18.     Interventional Cardiology is a subspecialty of cardiology that involves the diagnosis and treatment of various heart conditions using specialized catheter-based techniques that general cardiologists are not trained to use.

19.     Dr. Warner worked continuously for Bon Secours as an interventional cardiologist for nearly a decade, during which time he performed most of the interventional work for the Northside Practice Group.

**Relative Value Units at BSMH**

20.     Like many healthcare organizations, BSMH compensates its physicians based on their production, which is tracked through a metric called Relative Value Units or "RVUs."

21.     RVUs are a metric used by BSMH to calculate the relative level of time, skill,

training, and intensity required of a physician to provide a particular service.

22.     BSMH assigns different RVU values for various types of work or procedures. For example, an office visit is worth approximately 1.5 RVUs while a cardiac interventional procedure is worth approximately 12 RVUs.

23.     BSMH pays its physicians a set dollar amount per RVU earned.

24.     Accordingly, the number of RVUs a physician generates directly impacts the physician's pay.  Moreover, the number of RVUs a physician is capable of generating is based, in part, on the number of hours and type of work assigned to a physician by BSMH.

25.     BSMH also sets RVU production targets each year for each physician, which, upon information and belief, is based on data provided by the Medical Group Management Association ("MGMA") for all physicians nationally within specific practice specialties, including cardiology specialties and subspecialties.

26.     Within the cardiology division, interventional cardiologists are assigned higher RVU production targets than general cardiologists because the former tend to earn more RVUs for their work as the result of performing interventional procedures.

27.     Despite the heightened expectations, Dr. Warner always met or exceeded his RVU production targets as an interventional cardiologist.

28.     In fact, for roughly a decade after starting at Bon Secours, Dr. Warner's RVU production was among the highest for the Northside Practice Group.

**Dr. Warner's transition to general cardiology**

29.     In late 2017, Dr. Warner sought and received permission from Bon Secours to transition from an interventional cardiology practice to general cardiology, where his practice would be primarily focused on office visits with patients.

30.     Thereafter, Dr. Warner gradually began to phase out his interventional cardiology practice, which he completed in the summer of 2019.

31.     In the summer of 2018, Bon Secours merged with Mercy Health to become BSMH.

32.     In the fall of 2019, Dr. Warner's supervisor, Dr. Sabharwal, approached Dr. Warner about reducing his hours and his corresponding RVU production target to 80 percent of that of a full-time non-interventional cardiologist.

33.     Dr. Sabharwal neither presented this schedule reduction as an option that Dr. Warner had a choice to refuse, nor as a permanent change to Dr. Warner's schedule.

34.     Believing that this schedule change would allow him to have a lower RVU production target while building his new non-interventional practice, and also believing that the change was temporary, Dr. Warner did not object to Dr. Sabharwal's imposed schedule reduction.

## Impact of COVID on RVU production at BSMH

35.     In early 2020, the COVID-19 pandemic began to spread throughout the United States.

36.     In response to the pandemic, the schedules of most or all physicians in BSMH's combined Northside and Southside Richmond-based cardiology practice groups (the "Whole Cardiology Group") were reduced.

37.     Furthermore, COVID-related restrictions constrained the practices of most BSMH physicians. For example, social distancing requirements meant that Dr. Warner had to schedule a portion of his appointments virtually, prompting many patients to cancel or postpone.

38.     As a result of the COVID pandemic in 2020, many—if not all—physicians in the Whole Cardiology Group experienced a reduction in RVU production.

39.     Upon information and belief, some physicians in the Northside Practice Group were

unable to meet their 2020 RVU production targets.

40.     Despite the significant RVU reduction in the Northside Practice Group in 2020, Dr. Warner generated an RVU production in 2021 that was consistent with or greater than other cardiologists in the Northside Practice Group who worked similar or more hours in 2021.

**BSMH reduces the hours of the two oldest physicians in Dr. Warner's practice**

41.     On April 15, 2021, Dr. Warner was called to a surprise meeting with Dr. Sabharwal and Aaron VanDall, the Administrative Director for BSMH cardiology groups.

42.     During the meeting, Dr. Warner was advised that beginning on October 1, 2021, his schedule would be reduced to 40 percent of a full-time general cardiologist's schedule and that he would be taken off the hospital rotation.

43.     Both mandated changes would substantially reduce Dr. Warner's capacity to earn RVUs and therefore substantially reduce his earnings.

44.     Dr. Warner was also informed that BSMH was reducing his vacation time, his continuing education reimbursements, and the hospital's contribution towards his medical and dental benefits.

45.     In explaining BSMH's decision, Dr. Sabharwal indicated that BSMH needed to reduce the number of full-time cardiologists in the Whole Cardiology Group from 16 to 15 because of low RVU production numbers during 2020. Therefore, BSMH chose to reduce the hours of Drs. Warner and Nelson—the two oldest physicians in the practice—to 40% and 60%, respectively.

46.     Dr. Sabharwal and Mr. VanDall did not explain why Drs. Warner and Nelson were chosen for the schedule reduction other than to state that Dr. Warner and some other cardiologists in the Northside Practice Group had not satisfied their RVU production targets for 2020.

47.     Upon information and belief, the data on which Dr. Sabharwal and Mr. VanDall

relied to conclude that Dr. Warner had not satisfied his 2020 RVU production targets was invalid.

48.     Moreover, upon information and belief, a number of other BSMH cardiologists in the Northside Practice Group—all of whom were younger than Dr. Warner —had likewise failed to satisfy their RVU production targets in 2020 based on the metrics used by Dr. Sabharwal and Mr. VanDall.

49.     Further, during the April 21 meeting Dr. Sabharwal inexplicably brought up Dr. Warner's age and told Dr. Warner a story about an older doctor who had a stroke shortly after he retired.

50.     Dr. Sabharwal told Dr. Warner that he did not want the same thing to happen to Dr. Warner, which would rob Dr. Warner of his retirement years.

51.     It was clear from this conversation that Dr. Sabharwal was informing Dr. Warner that Dr. Warner had been chosen for the schedule reduction because of his age.

52.     Following the April 15 meeting with Dr. Sabharwal, Dr. Warner's RVU production continued to outpace at least some of his younger colleagues through October 2021.

53.     This was true notwithstanding the fact that Dr. Warner had recently transitioned to a general cardiology practice and therefore had not yet had sufficient time to build a patient panel and was working 80 percent or less of a full-time schedule, as mandated by the BSMH administration.

**BSMH inexplicably keeps Dr. Warner at a reduced schedule even though separations by other cardiologists alleviated BSMH's business concerns**

54.     Multiple cardiologists separated from BSMH for various reasons following the April 15 meeting between Dr. Warner and Dr. Sabharwal.

55.     Specifically, Dr. Navin Gupta separated from BSMH in or around May 2021.

56.     Dr. Christine Browning separated from BSMH in or around August 2021.

57.     In light of these separations, the total number of cardiologists in BSMH's Whole Cardiology Group was reduced to 14, which was one less cardiologist than BSMH had indicated it needed to reach to satisfy its business concerns.

58.     Nevertheless, BMSH inexplicably moved forward with the decision to reduce Dr. Warner's hours in October 2021.

59.     In December 2021, Dr. Omar Shams, another cardiologist in Dr. Warner's group, separated from BSMH, bringing the total number of BSMH Richmond cardiologists to 13.

60.     Upon information and belief, the separation of these three physicians caused a shortfall within BSMH's Whole Cardiology Group. To alleviate this shortfall, BSMH could have requested that Dr. Warner return to an increased role within the Northside Practice Group, which Dr. Warner expressed a desire to do.

**BSMH continues to seek help in the cardiology department and hires a significantly younger cardiologist to help make up the lack of hours**

61.     Rather than increase the hours of either Dr. Warner or Dr. Nelson, upon information and belief, BSMH began actively recruiting physicians outside of the BSMH cardiology practices.

62.     As a result of these recruitment efforts, BSMH hired Dr. Denise Dietz, who, upon information and belief, is approximately 27 years younger than Dr. Warner.

63.     As of the filing of this Complaint, Dr. Warner continues, despite protest, to work at a substantially reduced rate and, as a result, has suffered tens of thousands of dollars in losses that continue to compile monthly.

**COUNT I: Age Discrimination (ADEA)**

64.     Dr. Warner incorporates the preceding paragraphs by reference.

65.     Defendant is an employer within the meaning of 29 U.S.C. §§ 623 and 630(b).

66.     At all times relevant to this action, Dr. Warner was and is an individual and an

employee of Defendant within the meaning of 29 U.S.C. § 623.

67.     Dr. Warner is over 40 years of age and therefore a member of a protected class under the ADEA.

68.     At all times during his employment with Defendant, Dr. Warner performed his job at a level that met or exceeded Defendant's expectations.

69.     Notwithstanding Dr. Warner's performance, Defendant took adverse action against Dr. Warner in ways that include, but are not necessarily limited to, substantially reducing his hours, pay, and benefits.

70.     The adverse action Defendant took against Dr. Warner was because of Dr. Warner's age, and Defendant would not have taken the adverse action but for Dr. Warner's age.

71.     At all relevant times, Defendants actions were willful and performed knowingly or with reckless disregard as to whether its conduct was prohibited under the ADEA.

72.     As a result of Defendant's conduct, Dr. Warner has suffered substantial damages.

## COUNT II: Age Discrimination (VHRA)

73.     Dr. Warner incorporates the preceding paragraphs by reference.

74.     Defendant is an employer within the meaning of Va. Code § 2.2-3905.

75.     At all times relevant to this action, Plaintiff was and is an individual employed by Defendant within the meaning of Va. Code § 2.2-3905.

76.     Dr. Warner is at least 40 years of age and therefore a member of a protected class under the VHRA.

77.     At all times during his employment with Defendant, Dr. Warner performed his job at a level that met or exceeded Defendant's expectations.

78.     Notwithstanding Dr. Warner's performance, Defendant discriminated against Dr.

Warner on the basis of his age in ways that include but are not limited to substantially reducing his hours, pay, and benefits.

79.     The discriminatory actions Defendant took against Dr. Warner was because of Dr. Warner's age, and Defendant would not have taken the adverse action but for Dr. Warner's age.

80.     At all relevant times, Defendants actions were willful and performed knowingly or with reckless disregard as to whether its conduct was prohibited under the VHRA.

81.     As a result of Defendant's conduct, Dr. Warner has suffered substantial damages.

**PRAYER FOR RELIEF**

82.     WHEREFORE, Dr. Warner respectfully requests that the Court enter judgment in his favor granting him legal and equitable relief as the Court may deem just, including, but not limited to:

      a.   front and back pay;

      b.   compensatory damages;

      c.   punitive damages;

      d.   attorneys' fees and costs; and

      e.   any other relief to which Dr. Warner is entitled by law and that the Court finds just and appropriate.

**JURY TRIAL DEMAND**

Plaintiff Mark Francis Warner demands a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: February 23, 2022

Respectfully submitted,

*/s/ Joshua L. Jewett*
Joshua L. Jewett (VSB No. 76884)
Pierce McCoy, PLLC
101 West Main Street, Suite 101
Norfolk, Virginia 23510
Tel: (757) 901-4382
Fax: (757) 257-0387
jjewett@piercemccoy.com

Benjamin D. Johnson (VSB No. 90812)
Pierce McCoy, PLLC
313 East Broad St., Suite 72
Richmond, Virginia 23219
Tel: 804-413-4021
Fax: (757) 257-0387
bjohnson@piercemccoy.com

*Counsel for Plaintiff Mark Francis Warner*